Thompson, J.
delivered the opinion of the Court.
No one can read this indictment, and, without winking very hard, not see at a glance that the draftsman of *652 it intended to insert the 8th November, instead of the 8th May. In all other respects it charges the elements, the ingredients of the offence of murder, the assault, the stroke, the mortal blow and wounding, the death on some day, and the malice prepense, with strict legal technicality and certainty. The assault, stroke, and mortal wound, are laid on the 7th November 1845. It is then stated, “ of which mortal wound the deceased languished, and languishing did live until the 8th day of November, in the year aforesaid, on which said 8th day of May, in the year aforesaid, he died.” Can it be pretended the draftsman of the indictment might have intended to lay the death on the 8th May 1845, after he had just alleged that he was stricken on the 7th November 1845, a subsequent day, and that he languished, and languishing did live until the 8th November, in the year aforesaid, when such an allegation would involve the natural impossibility of a man dying six months before the wound was inflicted of which he died ? He died, says the indictment, on the said 8th day of May. No day of May had been previously mentioned. If it be read May, you must, to avoid a natural impossibility, intend May of a subsequent year, 1846 or later. But the indictment says, in the “ year aforesaidand no year had been previously mentioned but the year 1845. Here, then, the indictment itself furnishes upon its face, by applying to it the obvious rules of grammatical construction, and referring the words the “said 8th day of May, in the year aforesaid,” to the last antecedent, the sure means of correcting this obvious and palpable mistake—a mistake which could not possibly mislead, puzzle, embarrass or surprise the prisoner—a mistake in the insertion of a word which it was surplusage and mere tautology to insert; and whether stricken out or suffered to remain, does not in the least alter the obvious and plain meaning of the indictment. In this case, then, it cannot be denied that all the substantial purposes for *653 which certainty is required in indictments, which are to notify the accused in legal form of the precise nature and character of the crime alleged against him, have been answered. The prisoner and his counsel well understood it. He neither demurred nor moved to quash, but pleaded not guilty, and went to trial on the indictment. Can it be possible that such a mistake as this, explained and corrected by the indictment itself, is neither aided by pleading over, nor cured by the statute of jeofails. We readily concede that the statute was not intended to cure substantial defects; but we cannot regard this in the light of a substantial defect. And if the statute will not allow us to relax the nice and rigid rules of construction put upon criminal pleadings by the common law, sufficiently to bring such a case as the present within its healing influence, it would seem to ns to bo valueless, and wholly inefficacious in disentangling criminal justice to any valuable extent from its net of forms. The laying of the day of the death in indictments, seems to have been required originally for two reasons; first, to fix and determine the date of the forfeiture consequent upon the offence by the common law ; second, that it should appear upon the face of the indictment, by a comparison and computation between the day of the mortal stroke and the death, that the party stricken died within the twelve mouths and a day; it being necessary that death should ensue within that time to constitute felonious homicide: the law otherwise referring the death to some other cause. The first reason never applied here, and has virtually ceased to apply in England. The last is still operative, and common law authorities have been cited to prove that the insertion of the day of the death is matter of substance. But since the prosecution is not tied down to the exact day laid in the indictment, but may prove any other day subsequent to the mortal stroke, and within the limit of twelve months and a day ; and since the time of the *654 death does not in truth enter into the essence, gist, and gravamen of the offence, (which consists of the malice prepense, the mortal stroke, and the consequent death,) except by way of, and in consequence of' a legal limitation, founded on a legal presumption, the insertion of the day of the death would seem to partake more of the nature of form than substance; and if it were a new question, untrammeled by authority and precedent, would, we think, be so decided. But in the view we have taken of this case, we lay no stress upon this last suggestion. It is unnecessary to examine the question in its common law aspect, and canvass and test it by the standard of common law adjudications. We found our judgment upon the influence and efficacy of our statute of jeofails upon the interpretation and construction of indictments, to cure a mere slip of the pen, a mistake like the present, explained and corrected as it is by common sense, necessary' and inevitable intendment, and by other parts of the indictment. We are, therefore, unanimously of opinion there was no error in the judgment of the Court below in admitting evidence of the death subsequent to the day of the mortal wound, as stated in the bill of exceptions; and no other error in the proceedings of which the prisoner could avail himself after verdict, by motion in arrest of judgment. We are, therefore, of opinion, and decide and advise in answer to the first question adjourned, that the Court below ought to overrule the prisoner’s motion in arrest of judgment, and proceed to enter up judgment according to the verdiqt; which renders any response to the second question adjourned unnecessary. The Court not deeming it incumbent on them to do more than to express its opinions upon the questions in the record, and adjourned, arising upon the bill of exceptions, and the motion in arrest of judgment, for errors apparent upon the record, purposely abstains from expressing any opinion as to the mistake in date, complained of as a defect in this indictment, if *655 objection had been taken by motion to quash or by demurrer ; and all that we will now say on that head is, if such a question were presented, we should consider and decide it under the influence of great repugnance and disinclination to render any judgment, or express any opinion calculated to encourage carelessness or laxity in criminal pleadings.